COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Raphael, Lorish and Callins


AARON MICHAEL JACKSON

                                         MEMORANDUM OPINION[*]

v.      Record No. 1473-22-3                     PER CURIAM
                                              JUNE 6, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Anne F. Reed, Judge

(Dana R. Cormier; Dana R. Cormier, P.L.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; Mason D. Williams, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.


Following his guilty plea, the trial court convicted Aaron Michael Jackson of aggravated

involuntary manslaughter while driving under the influence in violation of Code § 18.2-36.1.[1]

The trial court sentenced him to 20 years' imprisonment with 8 years suspended. Jackson argues

that the trial court abused its discretion in sentencing him to a 12-year active sentence. After

examining the briefs and record, the panel unanimously holds that oral argument is unnecessary

because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm

the trial court's judgment.

BACKGROUND

"In accordance with our appellate standard of review, we state the facts in the light most

favorable to the Commonwealth, the prevailing party below." *Laney v. Commonwealth*, 76

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

[1] The Commonwealth nolle prossed a felony charge for possession of a controlled
substance, Schedule I or II, and a misdemeanor charge for driving while intoxicated.

Va. App. 155, 160 (2022). In doing so, we "discard the evidence of the [appellant] in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018) (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

The parties stipulated that on the morning of August 30, 2020, C.G. was driving on Route 262 in Augusta County. Multiple witnesses had called 911 that morning to report that a "large SUV" was "all over the road." The SUV entered the opposite lane of travel and hit two vehicles, including C.G.'s Honda Civic. C.G. was killed on impact. The police determined that Jackson, who was "confused" and "uncooperative," was the driver of the SUV.

Jackson went to the hospital due to injuries he sustained in the collision. His blood was drawn about one hour after the crash. The Department of Forensic Science determined that Jackson had 0.25 milligrams per liter of methamphetamine in his system, as well as "some amphetamine." Police also discovered a bag of methamphetamine in the SUV.

Jackson pleaded guilty to aggravated involuntary manslaughter while driving under the influence, in violation of Code § 18.2-36.1. Before accepting Jackson's plea, the trial court conducted a colloquy with him to ensure he was entering the plea freely and voluntarily. During the colloquy, Jackson said that he understood that the maximum punishment for the offense was 20 years' incarceration, with a 1-year mandatory-minimum sentence, and that the trial court was not required to follow the sentencing guidelines. The court accepted Jackson's plea, finding that he made it "freely, intelligently and voluntarily" and that he understood the consequences of pleading guilty. Based on his plea and the proffered evidence, the trial court convicted Jackson of aggravated involuntary manslaughter while driving under the influence.

In a presentence statement, Jackson expressed remorse for C.G.'s death. But Jackson also said that, in light of his own high blood-sugar levels at the time of the accident, he "d[id] not

- 2 -

agree with [the] evidence presented in Court." Jackson also denied feeling impaired while driving. He added that he did not agree with the charge and was forced to plead guilty.

At the sentencing hearing, the Commonwealth presented evidence from C.G.'s friends, colleagues, and husband about how her death affected them and the community. C.G. was a wife, mother, and elementary-school music teacher. She was on her way to sing at a church in Staunton when the accident occurred. The Commonwealth also presented photographs of C.G. and the scene of the crash.

Jackson presented evidence about his family, including his wife and two-year-old son. Jackson admitted that at the time of the accident, he had a "problem with methamphetamine." Child Protective Services (CPS) became involved with his family after his son had "trace" amounts of methamphetamine in his umbilical cord. CPS had required Jackson to attend substance-abuse treatment classes at the community services board, where he had an appointment for the Monday following the accident.

Jackson testified that he was at his brother's house in Harrisonburg the weekend of the accident. He admitted having used methamphetamine "[l]ate Friday night, early Saturday morning." On Sunday morning, Jackson borrowed his brother's Suburban to visit his mother, son, and nephew in Staunton. He denied knowing why he had a high level of methamphetamine in his system after the accident, stating that he had not used drugs for the preceding 30 hours and did not "feel impaired" when he entered the car. Jackson also testified that he did not remember the accident. He recalled waking up at the hospital several days later with a broken hip, pelvis, and knee. While at the hospital, the doctors asked Jackson if he was diabetic because his "sugar levels were off the charts." Jackson had never been tested for diabetes. Jackson apologized to C.G.'s friends and family and acknowledged that she died because he was driving while "high on methamphetamine."

The discretionary sentencing guidelines recommended between 3 years and 3 months and 7 years and 11 months of incarceration. But in its closing argument, the Commonwealth argued that these guidelines did not adequately account for the impact of C.G.'s death. The Commonwealth asked for an active sentence of 15 years, with a goal of deterrence, but also recognizing that Jackson accepted responsibility by pleading guilty.

Jackson emphasized that he had expressed remorse, accepted responsibility for his actions, had a "nonviolent" criminal history, and "clearly" had a "problem with substance abuse." He argued that the "deterrent effect of a significant sentence" would be "minimal." Asserting that the sentencing guidelines reflected the charge and the crime's impact, Jackson asked for a sentence at the low end of the guidelines.

The trial court sentenced Jackson to 20 years' imprisonment with 8 years suspended. The court found that Jackson's guilty plea demonstrated some acceptance of responsibility. But to explain its upward departure from the sentencing guidelines, the court cited Jackson's prior driving and probation violations and the lack of genuine remorse in his testimony and presentence statement. The court also cited Jackson's refusal to explain the methamphetamine in his body and in the car.

## ANALYSIS

Jackson argues that the trial court abused its discretion by (1) sentencing him above the sentencing guidelines and (2) finding that he did not fully accept responsibility, did not express sufficient remorse, and refused to explain the amount of methamphetamine in his system. We disagree.

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing

the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* We therefore review sentencing decisions for abuse of discretion. *Laney*, 76 Va. App. at 165-66. A court abuses its discretion when "a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston–Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Minh Duy Du*, 292 Va. at 564 (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"In cases where the argument on appeal is simply a challenge to the duration of imprisonment, [Virginia courts] have consistently held that the sentencing statutes define the outer boundaries of the bell-shaped curve of reasonableness." *Id.* A trial court therefore cannot impose a sentence outside those statutory boundaries. *Rawls v. Commonwealth*, 278 Va. 213, 221 (2009). By contrast, "[t]he sentencing *guidelines* are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999) (emphasis added). "[T]he recommended sentencing ranges contained in these discretionary guidelines are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004). A judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F).

Jackson's sentence of 20 years, with 12 years of active incarceration, was within the sentencing range set by the legislature. *See* Code § 18.2-36.1(B) (setting 20 years as the

- 5 -

maximum sentence for aggravated involuntary manslaughter).  That this sentence exceeded the upper end of the guidelines' recommendation (7 years and 11 months) does not provide a "basis [for] post-conviction relief."  Code § 19.2-298.01(F).

Still, Jackson argues that the trial court abused its discretion by finding that he refused to fully accept responsibility, express sufficient remorse, and explain the amount of methamphetamine in his system.  He emphasizes that he admitted using methamphetamine and accepted responsibility for causing the accident.  Although he could not explain why he had so much methamphetamine in his system, he did not deny it.  He contends that the trial court "found an aggravating factor that did not exist" when it considered his "inability to explain certain evidence to be a denial of that evidence."

The trial court had the authority to weigh Jackson's mitigating evidence.  *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).  And the record shows that the court heard the mitigating evidence Jackson cites on appeal, including his statement that he accepted responsibility and his admission to using methamphetamine.

Balanced against those circumstances, however, was the seriousness of the crime and Jackson's statements in his presentence report and at his sentencing hearing.  Jackson claimed that he did not "feel impaired" while driving, even though the level of methamphetamine in his system was "two and a half times" the legal limit.[2]  He did not explain that high level and claimed that he last used methamphetamine 30 hours before the accident.  He also tried to deflect attention from the level of methamphetamine in his system by pointing to his high glucose levels.

After considering the circumstances, the trial court imposed the sentence that it deemed appropriate.  Because the court departed from the sentencing guidelines, Code § 19.2-298.01(B)

---

[2] Code § 18.2-266(v)(b) prohibits driving a motor vehicle with "a blood concentration . . . that is equal to or greater than . . . 0.1 milligrams of methamphetamine per liter of blood."

required it to explain its reasoning in writing. The court did so, citing Jackson's "extensive criminal history involving prior driving violations and non-compliance with probation," as well as his continued efforts to "lay blame elsewhere." In any event, "[t]he failure to follow any or all of the provisions of [that statute] shall not be reviewable on appeal." Code § 19.2-298.01(F). And the record does not show that the court considered an irrelevant factor, neglected a relevant factor, or committed a clear error of judgment.[3] *Lawlor*, 285 Va. at 213. To the contrary, when viewed "in the light most favorable to the Commonwealth," *Laney*, 76 Va. App. at 160, the record supports the trial court's statement that it "struggle[d] to find a true sense of understanding and remorse" in Jackson's statements. Thus, we cannot say that the court abused its discretion.[4]

---

[3] Jackson argues that the trial court relied on his lack of explanation for the methamphetamine in his system as "an aggravating factor that did not exist." But the trial court was "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc)). And "[i]n its role of judging witness credibility, the [court was] entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused [was] lying to conceal his guilt." *Id.* (first alteration in original) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)). Thus, the trial court could conclude that Jackson was not unable, but unwilling, to explain the methamphetamine in his system. Such unwillingness supports a finding that Jackson did not fully accept responsibility.

[4] To the extent that Jackson argues that his sentence is disproportionate, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011). We noted in *Cole* that the United States Supreme Court "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)); *cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting an Eighth Amendment challenge to a 133-year active sentence because the sentence was imposed for "eighteen separate crimes").

CONCLUSION

The trial court did not abuse its discretion in sentencing Jackson to 20 years' imprisonment with 8 years suspended.

*Affirmed.*